*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Adoption of S.F., a Minor. | ) ) ) ) ) ) ) ) ) | Supreme Court No. S-15359<br><br>Superior Court No. 3PA-12-00111 PR<br><br>O P I N I O N<br><br>No. 6974 – December 12, 2014 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Kathleen C. Barron, Wasilla, for Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

Robert appeals the superior court's decision that his consent was not required for his biological daughter's adoption.[1]  The superior court accepted the superior court standing master's recommendation that Robert's consent was not required under AS 25.23.050 because he had abandoned his daughter for a period of over six months, failed to provide for her care and support for over one year, and failed to

---

[1]     Pseudonyms have been used to protect the privacy of the parties.

meaningfully communicate with her for over one year. Because the abandonment finding is well-supported by the record, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

In August 2004, Shawna was born to Denise and Robert in Siloam Springs, Arkansas. At the time of Shawna's birth, Denise and Robert were living with Denise's mother, Beverly, in Westville, Oklahoma. Denise and Robert separated within a few months of Shawna's birth, but Robert remained in Westville until just before Shawna's first birthday. After their separation, the relationship became contentious and they disputed custody of Shawna.

Robert testified before the Alaska Superior Court Master in May 2013 that in 2005 he filed a custody petition with a court in Oklahoma, was granted temporary custody, and lived with Shawna for a few months. He testified that before the permanent custody hearing was held, he left Oklahoma to attend a funeral in California, leaving Shawna with Denise. Following his return, Shawna resumed living with him. However, he again left for California, this time for more than a month. Robert testified that he was not present at the permanent custody hearing in October 2005, but his attorney appeared on his behalf.

The only record from the Oklahoma proceeding that was presented to the Alaska Superior Court Standing Master reveals that it was not a custody proceeding — it was a paternity proceeding. Following this proceeding, a Decree of Paternity was issued by a judge of the District Court of Adair County, Oklahoma on October 3, 2005 and filed on October 27, 2005. According to the Decree, Robert had filed a Petition for Determination of Paternity, the court held a hearing on the petition on October 3, and Robert was not present but his attorney appeared for him. The court determined that Robert was Shawna's father and awarded Denise "full custody" of the child. Robert was

also allowed reasonable visitation and ordered to pay child support in the amount of $169 per month.

In the summer of 2006, Denise joined the National Guard. She spent nine weeks in Missouri for basic training and four months in Texas for additional training, returning to Oklahoma in April 2007. That June she married James, and the family moved to North Carolina. She was deployed to Iraq in 2009. After she returned from Iraq, the family moved to Colorado in 2010, then to Alaska in 2011. James petitioned the superior court for adoption of Shawna in 2012.

Robert returned from California to Oklahoma sometime in 2006, apparently after Denise had left for basic training. He contacted Beverly, who offered to send effects from him to Denise or Shawna, but he never pursued her offer. Robert claimed he never determined the outcome of the custody hearing or learned about his obligation to pay child support.

Over the next few years, he made occasional contact with Beverly through Facebook. Robert claimed that he had attempted to find Denise and Shawna, but was unaware how to locate them through the military and had no money to hire an attorney. Furthermore, he claimed that he had tried to get their contact information from Beverly, but she refused to supply it. Finally, Robert claimed that he was in the process of trying to find Denise on Facebook when he was served process regarding James's petition for adoption. Denise testified that she was never aware of any attempts by Robert to contact either her or Shawna, and she denied ever trying to hide her location from him. In fact, Denise posted a message to Robert on Facebook in March 2011, but he never responded.

## B.    Proceedings

James submitted a petition to adopt Shawna in the Alaska Superior Court in March 2012. The petition alleged that Robert's consent to the adoption was unnecessary because he had abandoned Shawna, had not provided monetary support for

her, and had not had meaningful contact with her. A hearing was held before a superior court master in May 2013. Following testimony, the master stated:

> There's really two versions of events for the Court to believe. One is that [Robert] left without a forwarding address, and the other is that [Denise] left without a forwarding address. . . .
>
> . . . .
>
> . . . I found the testimony of [Denise] and [Beverly] far more persuasive than the testimony of [Robert] with regards to how events unfolded, and what [Robert] could have done to try and be in touch with the child . . . . [Robert's] testimony is just not consistent, and it's certainly not consistent with the corroborating evidence with regards to a father making consistent efforts to do what he could to contact . . . the child.

That August, the master issued a report recommending that the superior court find Robert's consent not necessary for James's adoption of Shawna. The superior court accepted the master's report and recommendation.

## III. STANDARD OF REVIEW

"We review the superior court's factual findings in an adoption proceeding for clear error."[2] "A factual finding is clearly erroneous 'when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake.' "[3] A master's findings adopted by the superior court are considered the findings of the superior court.[4] The superior court's "factual findings enjoy particular

---

[2] *David S. v. Jared H.*, 308 P.3d 862, 867 (Alaska 2013) (citing *In re Adoption of S.K.L.H.*, 204 P.3d 320, 324 (Alaska 2009)).

[3] *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002) (quoting *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998)).

[4] *David S.*, 308 P.3d at 867 (citing Alaska R. Civ. P. 52(a)).

deference when they are based 'primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.' "[5]

## IV. DISCUSSION

The master based his recommendation that Robert's consent was not required for Shawna's adoption on findings that Robert: (1) "abandoned the [child] for over six months"; (2) "failed significantly without justifiable cause to provide for the care and support of the child for a period of over one year"; and (3) "failed to maintain communication with the child for over one year." Under AS 25.23.050, any of these findings would independently negate the consent requirement.[6] Given that we affirm on grounds of abandonment, we do not reach the other findings.[7]

---

[5] *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[6] AS 25.23.050(a) provides:

Consent to adoption is not required of
(1) . . . a parent who has abandoned a child for a period of at least six months; [or]
(2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause, including but not limited to indigency,
    (A) to communicate meaningfully with the child, or
    (B) to provide for the care and support of the child . . . .

[7] *See, e.g., Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 762 (Alaska 2009) ("Because only one statutory basis is required . . . we do not need to address the superior court's other . . . findings."). *Jon S.* made this point in a child in need of aid (CINA) case, but it applies equally to this adoption statute.

Alaska Statute 25.23.050(a)(1) states that "[c]onsent to adoption is not required of . . . a parent who has abandoned a child for a period of at least six months." Abandonment is established where a parent's "conscious disregard of the obligations owed by a parent to the child, lead[s] to the destruction of the parent-child relationship."[8]

The master found that "[t]here is clear and convincing evidence that [Robert] abandoned [Shawna] when he left Oklahoma without providing any forwarding information." The master also found that "[Robert] clearly disregarded his parental obligations when he went to California without leaving contact information, or contacting [Denise] in a reasonable timeframe to check on [Shawna]." Finally, the master found that Robert failed to take advantage of Beverly's offer to relay a message to Denise and Shawna. The master concluded that because Robert "has had no contact with [Shawna] since she was about one year old[,] [t]here is no parent-child relationship" between them.

The record supports the master's findings. Robert knew how to contact Denise before she left for basic training. After that, he knew how to contact Beverly and had done so several times since 2005. Furthermore, as the master correctly observed, "even if [Beverly] was reluctant to provide [Denise]'s contact information directly, [Robert] did not take advantage of her offer to relay a message." Finally, Robert never responded when Denise contacted him through Facebook in March 2011. These facts collectively indicate Robert's "conscious disregard" of his parental obligations to Shawna and a "destruction of the parent-child relationship,"[9] thus supporting the master's abandonment finding.

---

[8]     *D.M. v. State*, 515 P.2d 1234, 1237 (Alaska 1973).

[9]     *Id*.

Robert argues that the superior court erred by accepting the master's finding of abandonment; he asserts that he was prevented from communicating with his child not only by Denise, but also by Beverly, who refused to provide Denise's contact information. Robert relies on *In re Adoption of A.J.N*,[10] in which we reversed the superior court's finding of abandonment. But *A.J.N.* is inapposite because the superior court in that case failed to focus on the proper factors for determining abandonment.[11] Furthermore, *A.J.N.* is factually distinguishable from this case because the father there made ongoing efforts to exercise his visitation rights; his efforts were actively frustrated by the child's mother and stepfather.[12] Here, the evidence indicates that Robert made minimal effort to locate or contact Shawna, and no persuasive evidence indicates that either Denise or Beverly interfered with that effort.

Furthermore, the "findings of a master that are adopted by the superior court are considered the findings of that court."[13] Those "factual findings enjoy particular deference when they are based primarily on oral testimony because the superior court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[14] In this regard, we note that the master found Robert's testimony "not consistent" and less "persuasive" than Denise's and Beverly's testimony.

---

[10]     525 P.2d 520, 523 (Alaska 1974).

[11]     *Id.*

[12]     *Id*.

[13]     *David S. v. Jared H*., 308 P.3d 862, 867 (Alaska 2013) (citing Alaska R. Civ. P. 52(a)).

[14]     *Id.* (citing *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011)).

The master's findings of fact are amply supported by the record. The superior court thus did not clearly err by adopting the master's findings. Therefore the court also did not err in concluding that Robert's consent to Shawna's adoption by James was unnecessary.

## V. CONCLUSION

For the reasons given above, we AFFIRM the superior court.